**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

   vs.                           Cr. No. 21-1820 KWR/KK

GILBERT CORIZ,

      Defendant.

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S**</u>
<u>**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**</u>

THIS MATTER is before the Court on Defendant Gilbert Coriz's Motion to Suppress (Doc. 34) ("Motion"), filed September 25, 2022. In his Motion, Defendant asks the Court to suppress "all physical evidence unlawfully seized from 2416 Camino Capitan, Santa Fe, New Mexico on January 1, 2021." (*Id.* at 1.) Pursuant to an Order of Reference entered on October 4, 2022, United States Magistrate Judge Kirtan Khalsa held an evidentiary hearing on the Motion on November 30, 2022, and on January 3, 2023, issued her Proposed Findings and Recommended Disposition ("PFRD") recommending that the Motion be denied. (Docs. 39, 48, 50, 51.) Defendant timely filed Objections to Magistrate Judge's Report and Recommendations ("Objections") on January 23, 2023. (Docs. 54.) Having considered *de novo* the parties' submissions, the evidence presented, the PFRD and Defendant's Objections thereto, the record, and the relevant law, and being otherwise fully advised, the Court FINDS that Defendant's Objections should be OVERRULED, the Magistrate Judge's PFRD should be ADOPTED, and Defendant's Motion should be DENIED.

# I. <u>Standard of Review</u>

Federal district judges may refer motions to suppress evidence in criminal cases to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). "Within 14 days after being served with a copy" of the magistrate judge's proposed findings and recommendations, "any party may serve and file written objections to such proposed findings and recommendations." 28 U.S.C. § 636(b)(1). The district judge

> shall make a de novo determination of those portions of the ... proposed findings
> or recommendations to which objection is made. [The district judge] may accept,
> reject, or modify, in whole or in part, the findings or recommendations made by
> the magistrate judge. The [district] judge may also receive further evidence or
> recommit the matter to the magistrate judge with instructions.

*Id.* "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Further, "[i]n this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

Where a party files timely and specific objections to the magistrate judge's recommendation on a "dispositive" motion such as a motion to suppress, "the statute calls for a *de novo* determination, not a *de novo* hearing." *United States v. Raddatz*, 447 U.S. 667, 674 (1980). A *de novo* determination pursuant to 28 U.S.C. § 636(b) "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995). Although a district court must make a *de novo* determination of objections under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the magistrate judge's proposed findings and recommendations. *See Raddatz*, 447 U.S. at 676 ("[I]n providing for a 'de novo determination' rather than *de novo* hearing, Congress

intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.") (quoting 28 U.S.C. § 636(b)).

## II.  Factual Findings

At around 2:00 p.m. on January 1, 2021, Santa Fe Police Department ("SFPD") Detective Jared Alire applied for a warrant to search the residence, curtilage, and three vehicles at 2416 Camino Capitan in Santa Fe, New Mexico.[1] (Doc. 48, Ex. 1; Doc. 50 at 12:12-18, 14:7-24; 15:14 to 16:4.) In support of the application, Detective Alire executed an affidavit based on conversations with other law enforcement officers and his own investigation.[2] (Doc. 48, Ex. 1; Doc. 50 at 6:8 to 11:23.) Detective Alire's affidavit includes the following facts.

According to a neighbor's surveillance camera footage, at about 2:34 a.m. on January 1, 2021, a sedan arrived at 2416 Camino Capitan and sounded its horn. (Doc. 48, Ex. 1 at 3-4.) A woman exited the residence and argued with someone in the sedan, saying "this is war." (*Id.* at 4.) Four or five more people exited the residence and yelled at someone in the sedan. (*Id.*) One of the occupants of the residence got into the sedan, which began to drive away. (*Id.*) A second occupant positioned himself in the middle of Camino Capitan and shot at the sedan, and a third occupant positioned himself in the driveway of the residence and also shot at the sedan. (*Id.*) After the shots were fired, five people went back inside the residence. (*Id.*) At 2:49 a.m., two people got into a dark vehicle with a loud muffler, backed out of the driveway, and drove away. (*Id.* at 5.)

---

[1] Defendant contends, and the Government does not dispute, that Defendant resides at 2416 Camino Capitan. (Doc. 45 at 2; *see also* Doc. 41 at 2.)

[2] The first page of the affidavit is attached to the warrant admitted into evidence as Government's Exhibit 2, and indicates that the affidavit was filed on January 4, 2021, the first business day after January 1, 2021. (Doc. 48, Ex. 2 at 2.) But both the warrant and the signed, sworn affidavit admitted into evidence as Government's Exhibit 1 are dated January 1, 2021. (*Id.*, Ex. 1 at 7; *id.*, Ex. 2 at 1.)

At 2:52 a.m., SFPD officers were dispatched to 2416 Camino Capitan pursuant to a "shots fired" call. (*Id.* at 3.) The caller told SFPD Officer Francisco Alvarado that she heard several gunshots near her residence, which caused her to review footage from her surveillance camera. (*Id.*) In this footage, she saw an altercation at 2416 Camino Capitan in which two people shot at a fleeing vehicle. (*Id.*) The caller also told Officer Alvarado that the footage showed several people going back inside the residence at 2416 Camino Capitan after the shots were fired. (*Id.*) The Regional Emergency Communication Center advised Officer Alvarado that there was a lengthy history of calls regarding 2416 Camino Capitan and gave him three names linked to those calls, including Defendant's. (*Id.*) Officer Alvarado reviewed the caller's surveillance camera footage. (*Id.* at 3-4.)

The neighbor's surveillance camera footage showed that at about 3:26 a.m., two people exited the residence at 2416 Camino Capitan and searched the ground with flashlights, bending down several times to pick up objects before reentering the residence. (*Id.* at 4.)

At about 3:36 a.m., Officer Alvarado, and SFPD Officers Enrique Moreno, Jonathan Harmon, and Gabriel Weide went to Camino Capitan to try to gather shell casings and find any people who were hurt but, failing to do so, they left. (*Id.*)

The surveillance camera footage then showed that at about 3:51 a.m., two people again emerged from the residence at 2416 Camino Capitan and searched the ground with flashlights before reentering the residence. (*Id.*) One of these people appeared to be a woman wearing a gray hooded sweatshirt. (*Id.*) At 4:19 a.m., the dark vehicle with the loud muffler returned to 2416 Camino Capitan and parked in the driveway. (*Id.* at 5.) Two people exited the vehicle and entered the residence, where they remained for a few minutes. (*Id.*) They then exited the residence, entered

a dark vehicle, and drove away.[3] (*Id.*) At 5:25 a.m., another person exited the residence and rummaged inside a vehicle before reentering the residence. (*Id.*)

At around 7:30 a.m., SFPD officers found a red pick-up truck across the street from 2416 Camino Capitan with a window shot out and bullet holes in it. (*Id.* at 4.) Officers retrieved shell casings from the sidewalk in front of 2416 Camino Capitan and saw a gold Chrysler Sebring with bullet holes parked in the property's driveway. (*Id.*) SFPD Officer Patrick Pinson also reviewed the caller's surveillance camera footage. (*Id.* at 3-5.)

Officers made contact with homeowner S.C. at 2416 Camino Capitan.[4] (*Id.* at 5.) She refused to speak with them and told them to get a search warrant. (*Id.*) Officer Pinson noted that S.C. was wearing a gray hooded sweatshirt and appeared to be one of the people seen on the surveillance camera footage picking up items from the driveway. (*Id.*)

On the basis of Detective Alire's affidavit detailing the above facts, Santa Fe Magistrate Court Judge David A. Segura issued a warrant authorizing law enforcement officers to search "the person, place, records, and/or data described in the [search warrant] Affidavit" for "the person and/or property (evidence) described in the Affidavit." (Doc. 48, Ex. 2 at 1-2; Doc. 50 at 91:7 to 92:15.) The warrant further states that "[a] copy of the Affidavit is attached and made part of this Warrant."[5] (Doc. 48, Ex. 2 at 1.) Judge Segura issued the warrant at 2:10 p.m. on January 1, 2021. (*Id.*)

---

[3] The affidavit does not indicate whether this "dark vehicle" is the dark vehicle with a loud muffler to which it refers earlier. (Doc. 48, Ex. 1 at 5.)

[4] The affidavit does not indicate at what time officers made contact with S.C. (*See generally* Doc. 48, Ex. 1.)

[5] The first page of Detective Alire's affidavit is attached to the warrant admitted into evidence as Government's Exhibit 2. (Doc. 48, Ex. 2 at 2.) It is identical to the first page of the complete affidavit admitted into evidence as Government's Exhibit 1, except that: (1) it is file stamped; (2) the lines for "Date Filed" and "No.: In Open Court" are filled in; and, (3) the names of the registered owners of the vehicles to be searched are not redacted. (*Compare* Doc. 48, Ex. 1 at 1 *with id.*, Ex. 2 at 2.)

The affidavit incorporated into the warrant seeks authorization to search the "residence located at 2416 Camino Capitan," its curtilage, and three vehicles on the premises[6] for evidence of the crimes of shooting at or from a motor vehicle, tampering with evidence, negligent use of a deadly weapon, and criminal damage to property, in violation of N.M. Stat. Ann. §§ 30-3-8(B), 30-22-5(A) and (B)(2), 30-7-4(A)(1), and 30-15-1.[7] (Doc. 48, Ex. 1 at 1-2; *see also* Doc. 50 at 92:3-7.) The affidavit describes the following categories of evidence to be searched for:

(1)    "Photographs to be taken of the entire residence, both inside and out, to include the curtilage of the residence";

(2)    "Documents, photographs, or other items that will help to identify the occupants of the residence";

(3)    "Material(s) apparently used and/or intended for use in administering aid and/or assistance to injured people";

(4)    "Firearm(s), firearm components, firearm accessories, firearm cleaning materials, firearm cases, firearm owner manuals and/or any other items used to facilitate the possession, use, maintenance and/or transfer of the said item(s)," as well as "[d]ocument(s) that establish or tend to establish ownership, possession, use, transfer and/or the right to ownership, possession, use and/or transfer of" such items;

(5)    "Ammunition, whether fired or unfired, projectile(s), fragment(s) of projectile(s), ammunition casing(s) whether fired or unfired and/or any other component(s) of ammunition," as well as "[d]ocument(s) that establish or tend to establish

---

[6] Due to a lack of time before dark, officers ultimately decided to seal the three vehicles, seize them, and apply for separate warrants to search them at a later time. (Doc. 50 at 60:7-16, 87:8-18.) Judge Segura issued separate warrants to search the vehicles on January 8, 2021. (Doc. 48, Exs. 3-5.) Defendant seeks to suppress ammunition and a projectile seized from these vehicles, but only "based upon the initial warrant, not the subsequent warrants." (Doc. 50 at 97:2-8, 98:18 to 99:7.) Thus, like the Magistrate Judge, the Court confines its analysis herein to the initial warrant and incorporated affidavit.

[7] "Shooting at or from a motor vehicle consists of willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another." N.M. Stat. Ann. § 30-3-8(B). "Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." N.M. Stat. Ann. § 30-22-5(A). "Negligent use of a deadly weapon consists of … discharging a firearm into any building or vehicle or so as to knowingly endanger a person or his property." N.M. Stat. Ann. § 30-7-4(A)(1). "Criminal damage to property consists of intentionally damaging any real or personal property of another without the consent of the owner of the property." N.M. Stat. Ann. § 30-15-1. The affidavit erroneously refers to Section 30-22-5 as Section 30-22-58. (Doc. 48, Ex. 1 at 2-3, 6.) Defendant does not rely on this error in his Motion, reply, or Objections, nor did he raise it at the evidentiary hearing on the Motion. (*See generally* Docs. 34, 45, 48, 54.)

ownership, possession, use, transfer and/or the right to ownership, possession, use and/or transfer of" such items;

(6)    "Residue(s) apparently deposited by the discharge of firearm(s) and/or any explosion(s) and/or any item(s) and/or material(s) that may have" such residue on or in them;

(7)    "Cellular telephone, and smart phone (mobile devices)";

(8)    "Diagram measurements of the residence and the residence's curtilage"; and,

(9)    "Evidence of any drug use or any trash related thereto."

(Doc. 48, Ex. 1 at 1-2, 6.)

At about 2:30 p.m., Detective Alire and his commanding officer arrived at 2416 Camino Capitan to execute the warrant with the help of SFPD SWAT. (Doc. 50 at 14:15-16, 16:24 to 17:4, 17:8-12.) SWAT officers entered the residence to clear it and found Defendant hiding in a closet in the garage. (*Id.* at 17:15-21, 77:8-10.) They detained him and took him outside. (*Id.*) While clearing the garage SWAT officers observed firearms but left them in place. (*Id.* at 80:10-14, 84:19-23.)

Detective Alire briefed SFPD Crime Scene Officer Diana Conklin about what they were allowed to search for and where they were allowed to search.[8] (*Id.* at 77:12-19.) Only Detective Alire and Officer Conklin executed the warrant, (*id.* at 17:20-24, 77:17-23), although the SWAT commander did point out the firearms in the garage to Detective Alire, (*id.* at 80:10-14), who found an AR-15 or M-4 rifle[9] with ammunition in its magazine, a 9-millimeter Glock handgun with ammunition in its magazine, and a 12-guage sawed-off shotgun. (*Id.* at 18:2-9, 25:24-25; Doc. 48,

---

[8] Both Detective Alire and Officer Conklin had copies of the warrant at issue. (Doc. 50 at 18:16-20, 76:15 to 77:2.)

[9] Detective Alire testified that the rifle found at 2416 Camino Capitan was an AR-15, but the Return Inventory attached to the warrant indicates that it was an "M-4 Carbine Colt Defense 5.56 MM … Rifle w[ith] scope." (Doc. 50 at 17:25 to 18:4; Doc. 48, Ex. 2 at 3.) The Return Inventory appears to have been signed by Officer Conklin and witnessed by Detective Alire. (Doc. 48, Ex. 2 at 3.)

Ex. 2 at 3.) The firearms were next to each other, visible under something,[10] and ten to 15 feet away from where Defendant had been hiding. (Doc. 50 at 25:16 to 26:2, 26:7-10, 83:12-19, 84:3-9.) At Detective Alire's direction, Officer Conklin seized the firearms and ammunition. (*Id.* at 18:10-13, 84:16-20.) The officers also found two AR rifle magazines in the living room, which they did not seize, and shell casings outside the residence.[11] (*Id.* at 18:6-9, 25:17 to 26:2, 66:13-16, 86:2-11; Doc. 48, Ex. 2 at 3.)

### III. *Procedural History*

On November 17, 2021, Defendant was charged by criminal complaint with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924 on or about January 1, 2021. (Doc. 1 at 1.) On December 8, 2021, the grand jury returned an indictment charging Defendant with the same offense. (Docs. 3, 4.) Attorney Joel Meyers represented Defendant at his initial appearance on January 14, 2022, (Doc. 9), and filed a Notice of Entry of Appearance four days later. (Doc. 16.) On January 18 and 19, 2022, the Court held an arraignment and detention hearing at which it ordered Defendant to be detained pending trial. (Docs. 14, 20, 21.) Trial in this matter was originally set for March 7, 2022, and has been continued five times. (Docs. 18, 23, 25, 27, 38, 47.) It is currently set for March 6, 2023. (Doc. 47.)

Defendant filed the Motion presently before the Court on September 25, 2022. (Doc. 34.) The Government responded in opposition to the Motion on October 7, 2022, and Defendant replied

---

[10] Defendant objects to the Magistrate Judge's proposed factual finding that the firearms were visible under "something like a table or chairs[.]" (Doc. 54 at 1-2 (citing Doc. 51 at 6).) The Court need not determine under what object the firearms were visible to resolve Defendant's Motion and has therefore not adopted the Magistrate Judge's proposed factual finding in that regard.

[11] The Government contends that officers also took photographs of the premises and found and seized "[a] small amount of cocaine." (Doc. 41 at 8-9 & n.4.) Although Detective Alire alluded in his testimony to photographs Officer Conklin took during their search, (Doc. 50 at 85:12-18), there is no record evidence to prove how many photographs she took or what they depicted; and, although the Return Inventory attached to the warrant does include a "[c]lear bag w[ith] white powdery substance," (Doc. 48, Ex. 2 at 3), there is no record evidence to prove what the substance was.

in support of it on October 21, 2022. (Docs. 41, 45.) By an Order of Reference dated October 4, 2022, the Court referred Defendant's Motion to Magistrate Judge Khalsa to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the Motion. (Doc. 39.)

On November 30, 2022, the Magistrate Judge held an evidentiary hearing on the Motion. (Docs. 48, 50.) At the hearing, Detective Alire testified, and the Court admitted five exhibits offered by the Government into evidence. (*Id.*, Exs. 1-5; Doc. 50 at 16:16-21, 93:24 to 95:21.) These exhibits are:  (1) the search warrant affidavit Detective Alire executed on January 1, 2021, regarding the residence, curtilage, and three vehicles at 2416 Camino Capitan, (Doc. 48, Ex. 1); (2) the search warrant Judge Segura issued on January 1, 2021 pursuant to Detective Alire's affidavit, (*id.*, Ex. 2); and, (3) the three search warrants Judge Segura issued on January 8, 2021, regarding the vehicles officers seized on January 1, 2021 pursuant to the initial warrant, with underlying affidavits. (*Id.*, Exs. 3-5.)  On January 3, 2023, the Magistrate Judge issued her PFRD recommending that the Motion be denied. (Doc. 51.) Defendant timely filed Objections to the PFRD on January 23, 2023. (Docs. 52, 53, 54.)  The Government filed a response on February 3, 2023, asking that the Court overrule Defendant's Objections and adopt the PFRD "*en toto*." (Doc. 57.)

### *IV. Analysis*

In his Motion, Defendant asks the Court to suppress "all physical evidence seized from 2416 Camino Capitan on January 1, 2021." (Doc. 34 at 1, 7.) In support of this request, Defendant argues that Detective Alire's affidavit "is so lacking in probable cause that it provided an insufficient basis to issue the warrant" and "any reliance on it is objectively unreasonable." (*Id.* at 4, 6.) More specifically, Defendant argues that the affidavit includes insufficient facts to show

"any connection between the items sought and the place to be searched" and fails to explain why Detective Alire "believed that firearms (along with the other sought-after items) would still be present inside the subject residence when he applied for the warrant." (*Id.*) Defendant also argues that the affidavit fails to establish probable cause for particular categories of evidence listed in it. (*Id.* at 4-5.) Thus, according to Defendant, "the warrant must fail, and any evidence seized must be suppressed." (*Id.* at 4.)

In response, the Government first asserts that Detective Alire's affidavit establishes "probable cause to believe that evidence of criminal activity would be found in [Defendant's] home," describing "a substantial nexus between the crimes and the place to be searched." (Doc. 41 at 5.) The Government next argues that Defendant has failed to show that either:  (1) "the evidence he seeks to suppress was seized under an invalid clause" in the warrant; or, (2) "the invalid portions of the warrant predominate so that total suppression is required." (*Id.* at 6.) The Government maintains that "[t]he warrant's provisions for firearms, ammunition, and photos are valid," and that these are the only types of evidence seized from 2416 Camino Capitan that it will seek to use at trial.[12] (*Id.* at 8-9.) The Government adds that the Court may, if it finds some of the warrant's provisions overbroad, "redact the broad provisions and find that the balance of the warrant is valid." (*Id.* at 6.) Finally, the Government argues that, even if the Court were to find that the affidavit does not establish probable cause to search the places it lists, "the evidence obtained as a result of the search would still be admissible" pursuant to the good-faith exception to the warrant requirement, because officers relied on the warrant in good faith and their reliance was objectively reasonable. (*Id.* at 10, 12.)

---

[12] The Government claims that the only invalid portion of the warrant is the provision on "[m]aterial(s) apparently used and/or intended for use in administering aid and/or assistance to injured people." (Doc. 41 at 7 n.2.)

Defendant, in his reply, reiterates that the warrant at issue permits the search for and seizure of "many" items "completely untethered" to the facts set forth in Detective Alire's affidavit. (Doc. 45 at 1.) Defendant further asserts that the warrant authorizes officers "to search virtually *everywhere* and seize virtually *everything*" at 2416 Camino Capitan and is therefore "nothing more than a general warrant." (*Id.* at 2 (emphases in original).) Finally, he argues that the good-faith exception does not apply because Detective Alire's affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. (*Id.*)

In her PFRD, the Magistrate Judge proposed to find that law enforcement officers' search of the premises and seizure of firearms, ammunition, and photographs were constitutional because the search warrant is supported by probable cause and sufficiently particular, and though it is overbroad, valid portions of it are severable. (Doc. 51 at 10-24.) The Magistrate Judge further proposed to find that even if the Court were to find the entire warrant invalid, the good-faith exception to the warrant requirement would apply. (*Id.* at 24-27.)  The Magistrate Judge therefore recommended denial of Defendant's Motion. (*Id.* at 27.)

In his Objections, Defendant argues that, contrary to the Magistrate Judge's PFRD:  (1) the warrant is not supported by probable cause; (2) the warrant is an impermissible general warrant; (3) the valid portions of the warrant cannot be excised; and, (4) the good faith exception does not apply. (Doc. 54 at 2-5.) The Court has considered each of Defendant's arguments in its *de novo* review and will overrule his Objections and adopt the Magistrate's Judge's analysis as follows.

### A.      The warrant is supported by probable cause.

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure … against unreasonable searches and seizures." U.S. Const. amend. IV. A search or seizure is reasonable under the Fourth Amendment if it is conducted pursuant to a warrant

that:  (1) is supported by probable cause; and, (2) particularly describes the place to be searched, and the persons or things to be seized. *United States v. Cotto*, 995 F.3d 786, 795 (10th Cir. 2021), *cert. denied,* 142 S. Ct. 820 (2022) (quotation marks and brackets omitted); *United States v. Sells*, 463 F.3d 1148, 1153 (10th Cir. 2006); *see also United States v. Palms*, 21 F.4th 689, 697 (10th Cir. 2021) ("[T]he Fourth Amendment requires warrants to be supported by probable cause and to describe with particularity who and what can be searched and seized."). When a warrant does not satisfy these two requirements, a search or seizure conducted pursuant to it violates the Fourth Amendment, unless the search or seizure falls within an exception to the warrant requirement. *Cotto*, 995 F.3d at 795.

A search warrant affidavit establishes probable cause if it demonstrates a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Cotto*, 995 F.3d at 796; *Sells*, 463 F.3d at 1154. Probable cause is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life" and is "not readily, or even usefully, reduced to a neat set of legal rules." *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996) (quotation marks omitted). Thus, "[a]ffidavits for search warrants are to be tested and interpreted in a common sense and realistic manner." *United States v. Rahn*, 511 F.2d 290, 292 (10th Cir. 1975).

"Because a magistrate's probable cause determination must be supported by facts presented in the affidavit," courts limit their review "to those facts." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009); *see also United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014) ("When assessing probable cause, we look to the totality of the circumstances as detailed in the affidavit accompanying the application for the search warrant.")*.* The issuing "judge's decision that an affidavit submitted in support of a warrant established probable cause must be given great

12

deference," *Cotto*, 995 F.3d at 795, and the duty of a reviewing court is simply to ensure that the issuing judge "had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (quotation marks, ellipses, and brackets omitted); *see also Roach*, 582 F.3d at 1200 ("We afford great deference to a magistrate's finding of probable cause, reversing only if the affidavit supporting the warrant application provides no substantial basis for concluding that probable cause existed.") (quotation marks omitted). "The Fourth Amendment's strong preference for warrants" compels reviewing courts "to resolve doubtful or marginal cases by deferring to a magistrate judge's determination of probable cause." *United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009) (quotation marks omitted); *see also United States v. Leon*, 468 U.S. 897, 914 (1984) ("[W]e have expressed a strong preference for warrants and declared that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.") (quotation marks omitted).

To show probable cause, a search warrant affidavit must, among other things, "establish a substantial nexus between the crime and the place to be searched." *Cotto*, 995 F.3d at 796. An affidavit establishes the required nexus if it "describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* "Whether a sufficient nexus has been established … necessarily depends upon the facts of each case." *Biglow*, 562 F.3d at 1279. Relevant factors include "(1) the type of crime at issue, (2) the extent of the suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Cotto*, 995 F.3d at 796; *Biglow*, 562 F.3d at 1279.

Here, Detective Alire's affidavit establishes a fair probability that evidence of criminal activity would be found in the residence, curtilage, and vehicles at 2416 Camino Capitan, and the

13

issuing magistrate had a substantial basis to reach that conclusion. *Gates*, 462 U.S. at 238–39. Defendant contends that the affidavit "fails to explain why the items being sought would be located *inside* the residence." (Doc. 34 at 5 (emphasis in original).) The Court disagrees. First, the affidavit includes Detective Alire's attestation that he had reason to believe evidence of the crimes of shooting at a motor vehicle, tampering with evidence, negligent use of a deadly weapon, and criminal damage to property were concealed in the listed locations. (Doc. 48, Ex. 1 at 1-2.)

Then, the affidavit sets forth detailed facts to justify Detective Alire's belief, and these facts so plainly support the inference that evidence of the listed crimes was likely to be found in the listed locations that no further explanation is needed. (*Id.* at 3-5.) Without repeating all of these facts verbatim, the Court particularly notes that Detective Alire relied on surveillance camera footage[13] showing that:   (1) shortly after 2:30 a.m. on January 1, 2021, six people exited the residence at 2416 Camino Capitan and argued with someone in a sedan parked in front of it; (2) one of the occupants of the residence got into the sedan; (3) as the sedan started driving away, two of the remaining occupants shot at the sedan, one from the driveway and one from the street; (4) all five remaining occupants then reentered the residence; (5) at about 2:49 a.m., two people got into a dark vehicle in the driveway and drove away; (6) at about 3:26 a.m., two people exited the residence, searched the ground with flashlights, bent down to pick up objects, and returned inside; (7) at about 3:51 a.m., after officers had searched the area, two people again exited the residence and searched the ground with flashlights before going back inside; (8) at about 4:19 a.m., the dark vehicle returned and parked in the driveway, and two people exited it and entered the residence;

---

[13] As Defendant acknowledges, (Doc. 34 at 3-4), and as further discussed below, "hearsay may be used to establish probable cause for a search warrant." *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th Cir. 1992). And here, Detective Alire's affidavit includes other facts to corroborate what officers saw on the surveillance camera footage, including officers' observation of two vehicles with bullet holes in the vicinity of 2416 Camino Capitan, and their retrieval of bullet casings from the sidewalk in front of the residence. (Doc. 48, Ex. 1 at 4.)

(9) at about 4:25 a.m., two people exited the residence, got into a dark vehicle, and drove away; (10) at 5:25 a.m., one person exited the residence, appeared to rummage in a vehicle, and returned inside; and, (11) the person who told officers to get a warrant to search the premises appeared to be one of the people seen picking up items from the driveway earlier.

The foregoing evidence clearly establishes a very strong probability that two people who were occupying the residence at 2416 Camino Capitan at 2:30 a.m. on January 1, 2021, came out of the residence, shot at an occupied motor vehicle, and returned inside with the firearms they had just used. It also establishes more than a fair probability that these two people, or others also occupying the residence in the early morning hours, later exited the residence, retrieved shell casings or other evidence of the shooting, and returned inside with this evidence. And it establishes a fair probability that the firearms, shell casings, and other evidence remained on the premises, or in vehicles that occupants of the residence accessed, until the warrant was issued later that day.

Granted, the affidavit does not establish any of these facts with certainty. For example, it allows for the possibility that, after the shooting but before the warrant was issued, occupants of the residence drove away with the firearms and/or shell casings and concealed this evidence somewhere else. But a warrant does not have to be supported by a certainty. A fair probability is all that is required, *Gates*, 462 U.S. at 238-39, and here that standard has plainly been met.

As noted above, relevant factors regarding whether an affidavit shows a sufficient nexus between a crime and a place to be searched include "(1) the type of crime at issue, (2) the extent of the suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Cotto*, 995 F.3d at 796; *Biglow*, 562 F.3d at 1279. Here, the nature of the crimes at issue suggests that some physical evidence, such as shell casings, would likely remain on the premises. And though the suspects had

some opportunity to conceal evidence—or themselves—elsewhere, that opportunity was limited by the time of day and the relatively short time frame between the shooting and the issuance of the warrant. Also, according to Detective Alire's affidavit, five people, including both shooters, returned inside the residence at 2416 Camino Capitan after the shooting, and though two people later left, three did not. Finally, as to the nature of the evidence sought, firearms are not usually so inconspicuous and disposable that their possessors are likely to discard them just anywhere, particularly if the possessors have reason to believe they might soon need a firearm again, *e.g.,* because they have just shot at someone. Thus, considering all reasonable inferences as to where evidence of the crimes at issue would likely be found, Detective Alire's affidavit "establish[es] a substantial nexus between the crime[s] and the place[s] to be searched." *Cotto*, 995 F.3d at 796.

The affidavit in this case is very different from the affidavit in *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), to which Defendant cites in his Motion. (Doc. 34 at 6.) In *Gonzales*, the court found an insufficient nexus between the suspected crime and the place to be searched. *Id.* at 1230-31. The search warrant affidavit at issue included "no facts explaining how the address" to be searched was linked to the defendant or the suspected criminal activity, "or why the officer thought the items to be seized would be located at the residence." *Id.* at 1230.

> Rather, besides the physical description of the address, the only facts before the magistrate were that [the defendant] was a convicted felon and a Glock 10mm magazine was found in a vehicle in which he was the only occupant. The only attempt at a connection was the detective's assertion that in his experience, 'firearm [sic] are often kept at the residence.'

*Id.*

Detective Alire's affidavit, in contrast, extensively describes the link between the suspected criminal activity and the places to be searched. Indeed, according to the facts set forth in the affidavit, virtually all of the suspected crimes were committed in the curtilage or on the street or

sidewalk in front of 2416 Camino Capitan, by people who exited the residence immediately beforehand, reentered it immediately afterward, and later accessed vehicles parked in its driveway. For these reasons, Detective Alire's affidavit establishes a fair probability that evidence of the suspected crimes would be found in the residence, curtilage, and vehicles at 2416 Camino Capitan. *See, e.g., United States v. Long*, 774 F.3d 653, 659 (10th Cir. 2014) (warrant was supported by probable cause when affidavit established that "the contraband was observed at the place to be searched"). Further, the issuing magistrate had a substantial basis for concluding that the affidavit established probable cause to search the listed locations for evidence of the listed crimes, *Gates*, 462 U.S. at 238-39, and the Court would therefore be compelled to defer to his determination even if the case were "doubtful" or "marginal." *Biglow*, 562 F.3d at 1282.

Defendant objects that, in her PFRD, the Magistrate Judge improperly relied on Detective Alire's sworn statements concerning the neighbor's surveillance footage when she proposed to find that the warrant was supported by probable cause, arguing that "[t]here was no testimony about the completeness, accuracy, or authenticity of such footage." (Doc. 54 at 1.) This objection "goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." *Brinegar v. United States*, 338 U.S. 160, 172–73 (1949). Defendant's objection "approaches requiring (if it does not in practical effect require) proof sufficient to establish guilt in order to substantiate the existence of probable cause." *Id.* at 173. But "[t]here is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." *Id.*

In arguing that the Magistrate Judge should have proposed to invalidate the warrant at issue in the absence of testimony about the completeness, accuracy, and authenticity of the neighbor's

surveillance footage, Defendant erroneously attempts to impose a higher standard of proof than is required to substantiate the existence of probable cause. Rather, as *Brinegar* makes clear, Detective Alire did not need to formally authenticate the surveillance footage in order to use it to show probable cause, and his affidavit establishes a substantial basis for crediting the footage as a reliable depiction of the shooting. Moreover, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence may not be admissible at trial." *Raddatz*, 447 U.S. at 679; *see also* Fed. R. Evid. 104(a) ("The Court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so doing, the court is not bound by evidence rules, except those on privilege."); Fed. R. Evid. 1101(d)(1) (The Federal Rules of Evidence—"except for those on privilege—do not apply to … the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility.").

> In dealing with probable cause, … as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

*Brinegar*, 338 U.S. at 175. The Court may properly consider the affidavit and testimony concerning the neighbor's surveillance footage that officers obtained and reviewed, and Defendant's meritless objection on this point is overruled.

### B.    The warrant is overbroad as to three items but is not general.

As previously noted, in addition to being supported by probable cause, "warrants must be particular as to the place to be searched and items to be seized." *Cotto*, 995 F.3d at 798. "It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009) (quotation marks and brackets omitted). A description "is sufficiently particular when it enables

18

the searcher to reasonably ascertain and identify the things authorized to be seized." *Wellington v. Daza*, No. 21-2052, 2022 WL 3041100, at \*4 (10th Cir. Aug. 2, 2022) (quotation marks and citations omitted); *Sells*, 463 F.3d at 1154; *Pulliam*, 748 F.3d at 972; *see also Cassady*, 567 F.3d at 643 ("As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized."). In addition, the warrant must "describe the items to be seized with as much specificity as the government's knowledge and circumstances allow." *United States v. Suggs*, 998 F.3d 1125, 1132 (10th Cir. 2021); *Wellington*, 2022 WL 3041100 at \*4.

Yet the particularity requirement has never "been understood to demand of a warrant technical precision, or elaborate detail, but only practical limitations, affording reasonable specificity[.]" *United States v. Christie*, 717 F.3d 1156, 1166 (10th Cir. 2013) (quotation marks, citations, and brackets omitted). Thus, "[a] warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *Pulliam*, 748 F.3d at 972. "This is because even warrants phrased in generic terms can, under some circumstances, still allow the executing officers to distinguish between items that may and may not be seized." *United States v. Le*, 173 F.3d 1258, 1272 (10th Cir. 1999) (quotation marks omitted). Also, warrants "may cross-reference other documents, such as the affidavit in support of the application, to satisfy the particularity requirement." *Pulliam*, 748 F.3d at 972.

"There is a difference … between warrants which are 'general,'" *i.e.*, insufficiently particular, "and those which are 'overly broad.'" *Cotto*, 995 F.3d at 798.

> General warrants are those that allow government officials to engage in exploratory rummaging in a person's belongings. To be invalidated as general, the warrant must vest the executing officers with unbridled discretion to conduct an exploratory rummaging through the defendant's property in search of criminal evidence. By

> contrast, an overly broad warrant describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause.

*Id.* (citations, quotation marks, and brackets omitted); *see generally United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988) ("The [F]ourth [A]mendment requires not only that the warrant sufficiently specify the evidence to be seized, but also that the scope of the warrant be limited to the specific areas and things for which there is probable cause to search.").

As a preliminary matter, Defendant has *not* argued that the search warrant at issue is insufficiently particular because it fails to adequately incorporate Detective Alire's affidavit.[14] (*See* Docs. 34, 45.) Further, even if Defendant had raised this argument, it would be without merit. A warrant incorporates an underlying affidavit when two requirements are met. *Suggs*, 998 F.3d at 1135. First, "the warrant and the affidavit must be attached," and second, "the warrant must expressly incorporate the affidavit." *Id.*

> As to the latter requirement, a warrant does not incorporate an affidavit merely by mentioning the affidavit or reciting that the magistrate judge found probable cause to authorize the search. Instead, the search warrant must expressly refer to the affidavit *and* incorporate it by reference using suitable words of reference.

*Id.* (emphasis in original) (citation and quotation marks omitted).

The Tenth Circuit has found that a warrant "plainly incorporated the underlying affidavit" when the warrant "authorized officers to search 'the persons and/or place described in the affidavit'" and provided that "[a] copy of the Affidavit is attached and made a part of this Search Warrant." *Id.* (citing *United States v. Sadlowski*, 948 F.3d 1200, 1205 (10th Cir. 2020)) (emphasis omitted). Similarly, the warrant at issue here authorizes officers to search "the person, place,

---

[14] Both parties briefed Defendant's Motion as if Detective Alire's affidavit were the warrant. (*See* Docs. 34, 41, 45.) However, at the evidentiary hearing, the Court pointed out that the affidavit and warrant are distinct, (Doc. 50 at 26:22 to 27:6, 89:23 to 90:9, 94:6-8); and, though Defendant could have submitted supplemental briefing after the hearing, (Doc. 49), he elected not to do so.

records, and/or data described in the Affidavit" for "the person and/or property (evidence) described in the Affidavit," and states that "[a] copy of the Affidavit is attached and made part of this Warrant." (Doc. 48, Ex. 2 at 1.) Thus, like the warrant in *Sadlowski*, the warrant in this case successfully incorporates the underlying affidavit, and the Government may rely on the affidavit as well as the warrant to satisfy the Fourth Amendment's particularity requirement.

Defendant argues that the warrant is nevertheless overbroad because Detective Alire's affidavit fails to establish probable cause as to some of the categories of evidence the warrant incorporates, most particularly cell phones and evidence of drug use. (Doc. 34 at 4-5; Doc. 45 at 1-2.) Also, the Government concedes that the affidavit does not establish probable cause to search for and seize a third category of evidence the warrant incorporates, *i.e.*, "[m]aterial(s) apparently used and/or intended for use in administering aid and/or assistance to injured people." (Doc. 41 at 7 n.2.)

The Court agrees that the warrant is overbroad because Detective Alire's affidavit fails to establish probable cause to search for and seize these three categories of evidence. As Defendant observes, the facts in the affidavit do not refer to or directly involve cell phones, drug use, or injured people. (Doc. 34 at 4-5; Doc. 45 at 1.) Detective Alire did plausibly explain why he wanted to search for cell phones and evidence of drug use and injuries at the evidentiary hearing on Defendant's Motion. (*See* Doc. 50 at 20:7 to 21:4 (injuries); *id.* at 23:1-25 (cell phones); *id.* at 24:12 to 25:8 (drug use).) Yet, as Detective Alire acknowledged, Judge Segura could only consider the facts included in the affidavit to determine whether there was probable cause to issue a warrant,

(Doc. 50 at 63:1-4), and this Court must likewise confine its probable cause analysis to those facts.[15] *Roach*, 582 F.3d at 1200; *Pulliam*, 748 F.3d at 971.

Conversely, Detective Alire's affidavit does establish probable cause to search for and seize the remaining six categories of evidence the warrant incorporates. Defendant makes no specific arguments regarding these categories and concedes that "theoretically searching for firearms makes sense." (Doc. 34 at 4.) Moreover, in light of the facts described in the affidavit, (1) photographs of the residence and curtilage, (2) documents identifying the residence's occupants, (3) firearms and related items, (4) ammunition and related items, (5) residue from firearms or explosions, and (6) diagram measurements of the residence and curtilage all constitute "particularly described evidence relating to … specific crime[s] for which there is demonstrated probable cause." *Cassady*, 567 F.3d at 636.

In his reply and also in his Objections, Defendant argues that the warrant is not only overbroad but also "general," because it authorizes officers to "search virtually *everywhere* and seize virtually *everything*." (Doc. 45 at 2 (emphases in original); *see also* Doc. 54 at 2-3.) But this argument relies on a material exaggeration of the warrant's scope. The warrant incorporates nine categories of evidence officers could search for and seize. (Doc. 48, Ex. 1 at 2; *id.*, Ex. 2 at 1.) Each category "enables the searcher to reasonably ascertain and identify the things authorized to be seized," *Wellington*, 2022 WL 3041100 at *4, and "describe[s] the items to be seized with as much specificity as the government's knowledge and circumstances allow." *Suggs*, 998 F.3d at 1132. And, neither the warrant nor the incorporated affidavit includes a "catch-all" provision like the one that invalidated the entire warrant in *Suggs*, which "authoriz[ed] the search and seizure of

---

[15] In its response to Defendant's Motion, the Government also proffers a reason for including cell phones in the warrant. (Doc. 41 at 7.) But again, Detective Alire did not include this reason in his affidavit, to which the Court's probable cause analysis must be confined. *Roach*, 582 F.3d at 1200; *Pulliam*, 748 F.3d at 971.

'any item identified as being involved in crime'" without reference to a specific offense. *Id.* at 1132-33 (brackets omitted). On the contrary, here the affidavit lists not only the nine specific types of items to be searched for but also the four specific crimes to which these items were to relate. (Doc. 48, Ex. 1 at 2-3; *id.*, Ex. 2 at 1.) Thus, although the warrant at issue is overbroad, it is not impermissibly general. *Cotto*, 995 F.3d at 798.

### C.   The valid parts of the warrant are severable.

When possible, courts "apply the doctrine of severance to save an overbroad warrant." *Cotto*, 995 F.3d at 798. Under this doctrine, courts sever a warrant's valid portions from its invalid portions, "and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible." *Id.* at 798-99; *Sells*, 463 F.3d at 1155. "To make the severability doctrine applicable the valid portions of the warrant must be sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993).

Courts in the Tenth Circuit apply "a multistep analysis to determine whether a warrant is severable." *Suggs*, 998 F.3d at 1138. First, they "divide the warrant in a commonsense way" and "examine the validity of each section." *Id.* If at least one section "satisfies the probable cause and particularity requirements of the Fourth Amendment," courts then "determine whether the valid parts are distinguishable from the invalid ones." *Id.* If "each of the categories of items to be seized describes distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from the rest of the warrant," then the valid portions can be severed from the warrant. *Id.* (brackets omitted).

Here, the warrant is easily divided in a commonsense way because it incorporates nine separate categories of evidence to be searched for and seized. (Doc. 48, Ex. 1 at 2; *id.*, Ex. 2 at 1.)

As discussed in Section III.B., *supra*, six of these categories satisfy the Fourth Amendment's probable cause and particularity requirements, though three do not. And, each of the nine categories:  (1) is conceptually distinct; (2) is not linked to any of the others; and, (3) retains its significance when isolated from the rest of the warrant. (Doc. 48, Ex. 1 at 2; *id.*, Ex. 2 at 1.) Thus, under *Suggs*, the valid categories can be severed from the warrant. 998 F.3d at 1138.

The Tenth Circuit has cautioned, however, that "just because … portions of a warrant *can* be severed does not necessarily mean [courts] *may* sever them in all instances."  *Id.* (emphases in original). Rather, "[e]ven when a part of a warrant is valid and distinguishable, blanket suppression may still be required if the invalid portions so predominate the warrant that the warrant in essence authorizes a general, exploratory rummaging in a person's belongings." *Id.* (quotation marks omitted). "In those situations, courts may admit seized items only when the valid and distinguishable portions make up the greater part of the warrant." *Id.* (quotation marks omitted); *see also Cassady*, 567 F.3d at 638 ("[T]otal suppression may still be required even where a part of the warrant is valid … if the invalid portions so predominate … that the warrant in essence authorizes a general, exploratory rummaging in a person's belongings."); *Sells*, 463 F.3d at 1158 (same) (quotation marks omitted).

The "greater part of the warrant" analysis "focuses on the warrant itself rather than upon … the items actually seized during the search." *Suggs*, 998 F.3d at 1138; *Sells*, 463 F.3d at 1159. In determining whether the valid portions make up a warrant's greater part, courts in the Tenth Circuit "use a commonsensical approach that examines both the quantitative and qualitative aspects of the valid parts of the warrant relative to the invalid parts." *Suggs*, 998 F.3d at 1138. In other words, although courts do "tally the valid and invalid parts of the warrant," they also "examine the relative scope and invasiveness of each part." *Id.* (quotation marks omitted).

As discussed in Section IV.B., *supra*, the warrant in this case incorporates six valid and three invalid parts. Thus, quantitatively, the valid parts predominate. Further, the warrant does not include or incorporate a "catch-all section" such as the one at issue in *Suggs*, 998 F.3d at 1139; and, each of the six valid parts is at least as broad in scope and invasiveness as each of the three invalid parts such that, collectively, the valid parts predominate qualitatively as well.[16] Moreover, "a thorough and invasive search" conducted pursuant to the valid portions "would subsume any independent search connected to the invalid portions of the search warrant," *United States v. Astorga*, No. 21-cr-407, 2021 WL 2942027, at *7 (D.N.M. July 13, 2021), and so the invalid portions do not expand the invasiveness of the authorized search.

In his Objections, Defendant argues that the inclusion of drugs in the warrant "increased the invasiveness of the area to be search[ed]," because it enabled officers to search "even smaller places" than the places they were authorized to search for shell casings and ammunition. (Doc. 54 at 3-4.) Notably, however, Defendant fails to identify any specific smaller place officers could have searched for drugs that they could not also have searched for a shell casing or a round of ammunition. And as a practical matter, to the extent there is any distinction in size between possible places of concealment for drugs, casings, and ammunition, respectively, the distinction is slight enough that it does not materially affect the Court's severability analysis here.[17] For all of

---

[16] The warrant authorizes officers to search the listed locations for cell phones but does not authorize them to search the data on these devices, which would alter the scope and invasiveness of the search. (*See* Doc. 48, Exs. 1, 2.) In this regard, the Court notes that warrants to search cell phones are sufficiently particular when they limit the scope of the search "either to evidence of specific … crimes or to specific types of material." *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017). And here, the incorporated affidavit limits the scope of the search to the listed items, including cell phones, "as [they] relate[] to the crime of shooting at a motor vehicle" and the three other crimes referenced in the affidavit. (Doc. 48, Ex. 1 at 1-2; *id.*, Ex. 2 at 1.)

[17] At the evidentiary hearing, Detective Alire testified on cross-examination that drugs, for which the officers searched under an invalid provision, "could be anywhere" in a residence. (Doc. 50 at 78:10-12.) But again, as a practical matter, the same could be said of items for which the officers searched under valid provisions, such as ammunition or shell casings.

these reasons, the valid and distinguishable portions of the warrant make up its greater part and may be severed from the invalid portions. *Suggs*, 998 F.3d at 1138.

Further, severance supports denial of Defendant's Motion. The Government has confirmed that, of the items seized from the residence, curtilage, and vehicles at 2416 Camino Capitan, it will only seek to use firearms, ammunition, and photographs at trial. (Doc. 41 at 8.) All of these items were seized pursuant to valid parts of the warrant at issue. (Doc. 48, Ex. 1 at 2; *id.*, Ex. 2 at 1.) The Government adds that it "will agree" not to introduce or refer to evidence of drugs[18] and that officers "did not seize cellular phones." (Doc. 41 at 7-9.) Nor did officers seize any materials used or intended for use in administering aid or assistance to injured people. (Doc. 48, Ex. 2 at 3.) In sum, the Government has pledged that it will only seek to use items that were seized pursuant to the valid, severable parts of the warrant, and these items are not subject to suppression. *Cotto*, 995 F.3d at 798-99.

### D.      Even if the entire warrant were invalid, the good-faith exception would apply.

The Court agrees with the Magistrate Judge that even if the Court were to find the entire warrant invalid, the good-faith exception to the warrant requirement applies. "The ordinary remedy for a search conducted or items seized in violation of the Fourth Amendment" is suppression pursuant to the exclusionary rule. *Sells*, 463 F.3d at 1154; *see also Suggs*, 998 F.3d at 1140 ("In general, evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion.") (quotation marks omitted). However, "[e]ven if a court ultimately determines that a warrant … falls short of the constitutional requirements of probable cause or particularity," evidence obtained pursuant to the warrant is not subject to suppression if law

---

[18] Of course, whether the Government agrees or not, the Court will not permit the Government to use evidence seized pursuant to the invalid parts of the warrant because such evidence would be subject to suppression. But the Government's affirmative commitment not to use such evidence obviates the need for the Court to suppress it.

enforcement officers relied on the warrant "in objective good faith." *Cotto*, 995 F.3d at 795; *see also Christie*, 717 F.3d at 1165-66 ("The Fourth Amendment's exclusionary rule will not bar the use of evidence obtained by police officers acting in good faith and with reasonable reliance on a facially valid search warrant.") (quotation marks omitted); *United States v. Soderstrand*, 412 F.3d 1146, 1153 (10th Cir. 2005) ("When officers execute a search warrant in reasonabl[e] good faith reliance on its validity, evidence obtained through the warrant will not be suppressed even if the search warrant is ultimately determined to be invalid.").

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leary*, 846 F.2d at 607 (quoting *Leon*, 468 U.S. at 923 n.23). Courts "generally presume officers executed a search warrant in objective good faith." *United States v. Campbell*, 603 F.3d 1218, 1230 (10th Cir. 2010). "This presumption, however, does not apply when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon*, 468 U.S. at 923). Similarly, courts cannot presume that executing officers acted in objective good faith when a warrant is "so facially deficient … in failing to particularize the place to be searched or the things to be seized" that officers could not reasonably believe it to be valid. *Leon*, 468 U.S. at 923.

"When the search is of a home, the good-faith exception applies if the affidavit supporting the warrant," though lacking in probable cause, "establishes a minimally sufficient nexus between the illegal activity and the place to be searched." *Cotto*, 995 F.3d at 796-97 (quotation marks omitted)*; see also Gonzales*, 399 F.3d at 1231 ("[G]ood faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established."). And for the

good faith exception to apply to an insufficiently particular warrant, the "warrant must provide guidelines for determining what evidence may be seized." *Leary*, 846 F.2d at 609.

Here, as discussed in Section IV.A., *supra*, Detective Alire's affidavit establishes a fair probability that evidence of the listed crimes would be found in the residence, curtilage, and vehicles at 2416 Camino Capitan, and describes a substantial nexus between the crimes and the places to be searched. But even if the Court were to find that it does not, it is certainly not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Campbell*, 603 F.3d at 1230. And it certainly does establish "a minimally sufficient nexus" between the listed crimes and the listed locations. *Cotto*, 995 F.3d at 796-97.

In addition, as discussed in Section IV.B., *supra*, each of the categories of items the warrant incorporates "enables the searcher to reasonably ascertain and identify the things authorized to be seized," *Wellington*, 2022 WL 3041100 at *4, and "describe[s] the items to be seized with as much specificity as the government's knowledge and circumstances allow." *Suggs*, 998 F.3d at 1132. But again, even if the Court had found otherwise, the warrant and incorporated affidavit plainly "provide guidelines for determining what evidence may be seized," and are not "so facially deficient in [their] description of the items to be seized that the executing officers could not reasonably rely on [them]." *Leary*, 846 F.2d at 609.

When determining whether an officer's reliance on a warrant was objectively reasonable, the Court's "primary focus" must be the text of the warrant and underlying affidavit. *Cotto*, 995 F.3d at 796. But the inquiry also requires "a careful consideration of the totality of the circumstances." *Suggs*, 998 F.3d at 1140. For example, "it is indicative of good faith when the officer who prepares [the] affidavit is the same one who executes [the] search," and when the officer "obtain[s] approval of [the] warrant application from a superior and an attorney." *Cotto*,

995 F.3d at 796. Other potentially relevant factors include whether officers limited their search to evidence related to the suspected crimes, whether they read the warrant before executing it or "were otherwise informed of the warrant's contents or briefed on what items to look for," and whether they were on the property for other purposes, such as to conduct a protective sweep. *Suggs*, 998 F.3d at 1140-41.

These factors also support the application of the good-faith exception here. First, Detective Alire prepared the search warrant affidavit and also executed the search. (Doc. 50 at 11:18-23, 12:12-18, 17:2-7, 77:17-23.) Second, he obtained approval of the warrant application from his commanding officer and an assistant district attorney. (*Id.* at 14:13-20.) Third, at the evidentiary hearing, he explained why he believed each of the items listed in his affidavit related to the suspected crimes and confirmed that the affidavit includes "everything that [he] wanted to search for." (*Id.* at 19:4 to 25:15.) Fourth, Officer Conklin was the only other officer who participated in executing the warrant, Detective Alire briefed her regarding what the warrant allowed them to search for and where it allowed them to search, and there is no evidence that either officer searched for items excluded from Detective Alire's affidavit. (*Id.* at 17:20-24, 77:12-19.) Finally, SWAT officers were present only to "clear the house and make sure no one was inside the residence." (*Id.* at 77:8-10; *see also id.* at 17:15-24, 80:6-9.)

In his Objections, Defendant argues that the good-faith exception should not apply here because Detective Alire was responsible for both drafting the search warrant affidavit and executing the warrant, citing *United States v. Angelos*, 433 F.3d 738, 746 (10th Cir. 2006). (Doc. 54 at 4.) But this objection suffers from two fatal flaws. First, as just noted, the Tenth Circuit has specifically held that "it is indicative of good faith when the officer who prepares an affidavit is the same one who executes a search." *Cotto*, 995 F.3d at 796; *see also United States v. Russian*,

848 F.3d 1239, 1246 (10th Cir. 2017) ("Although a warrant application or affidavit cannot save a warrant from facial invalidity, it can support a finding of good faith, particularly where, as here, the officer who prepared the application or affidavit also executed the search.").[19] And second, *Angelos* is inapposite because in that case, the defendant challenged "the execution, and not the constitutionality, of the search warrant," 433 F.3d at 746, whereas here, the situation is reversed: Defendant's Motion challenges the warrant's constitutionality and not its execution. (*See generally* Doc. 34.)

Defendant also objects to the Magistrate Judge's proposed finding that Detective Alire "explained why he believed each of the items listed in the affidavit related to the suspected crimes," because the Magistrate Judge elsewhere proposed to find that the affidavit "fails to establish probable cause to search for and seize[] three categories of evidence." (Doc. 54 at 4-5 (citing Doc. 51 at 17, 25).) Defendant suggests that the two proposed findings are contradictory, (*id.*), but they are not. The Magistrate Judge's probable cause analysis was properly limited to the contents of the search warrant affidavit, whereas her good faith analysis also encompassed "a careful consideration of the totality of the circumstances." *Suggs*, 998 F.3d at 1140. And it was in the latter analysis that she acknowledged Detective Alire's evidentiary hearing testimony explaining why he included each category of items listed in his affidavit. (*See* Doc. 51 at 25.)

Finally, Defendant objects to the proposed finding that SWAT officers were present only to clear the house and make sure no one was inside the residence, because the SWAT commander pointed out firearms "under something" to Detective Alire. (Doc. 54 at 5.) In so arguing, however, Defendant ignores the Magistrate Judge's proposed finding that the firearms, though "under something," were nevertheless "visible." (Doc. 51 at 6.) And it is neither remarkable nor indicative

---

[19] Moreover, the inference underlying the Tenth Circuit's reasoning is entirely logical. An officer intending to act in bad faith is unlikely to subject his proposed search and its grounds to a magistrate's scrutiny before he conducts it.

of bad faith that SWAT officers noted the visible presence of firearms while clearing a residence for officer safety. In sum, the Court agrees with the Magistrate Judge that in light of the totality of the circumstances, even if the Court had found the entire warrant invalid under the Fourth Amendment, the evidence the Government seeks to use at trial would not be subject to suppression because the good-faith exception would apply. *Suggs*, 998 F.3d at 1140; *Cotto*, 995 F.3d at 796.

### IV. Conclusion

For all of the above reasons, Defendant Gilbert Coriz's Motion to Suppress (Doc. 34) is DENIED.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE